UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

MICHELLE RENEE MCGRATH and
VERONICA O'BOY, on behalf of
themselves and all others similarly
situated,

Plaintiffs,

v.

WYNDHAM RESORT
DEVELOPMENT CORPORATION, an
Oregon corporation; WYNDHAM
VACATION OWNERSHIP, INC., a
Delaware corporation; WYNDHAM
VACATION RESORTS, INC., a
Delaware corporation; WYNDHAM
WORLDWIDE OPERATIONS, INC., a
Delaware corporation; and DOES 1
through 10, inclusive,

Defendant.

Case No.:  15cv1631 JM (KSC)

**ORDER GRANTING PLAINTIFFS'
MOTIONS FOR FINAL APPROVAL
OF CLASS SETTLEMENT AND
ATTORNEYS' FEES**

**FINAL JUDGMENT**

Before the court are Plaintiffs Michelle Renee McGrath and Veronica O'Boy's
(collectively, "Plaintiffs") motions for final approval of class action settlement and
attorneys' fees.  (Doc. No. 81.)  Defendants Wyndham Resort Development Corporation,
Wyndham Vacation Ownership, Inc., Wyndham Vacation Resorts, Inc., and Wyndham

Worldwide Operations, Inc. (collectively, "Defendants" or "Wyndham") do not oppose either motion. Because the settlement is fundamentally fair, reasonable, and adequate, and the fee request is reasonable and well supported, the court grants both motions, approves the settlement, and enters final judgment.

## BACKGROUND

### I.    Parties, Claims, and Procedural History

Wyndham sells interests in timeshare properties throughout the world. Plaintiff McGrath worked as a sales representative for Wyndham from February 2013 until July 2013 and as a sales administrative coordinator from August 2013 to March 2015. Plaintiff O'Boy worked as a sales representative for Wyndham from March to September 2014.

After completing a 60-day training period, which is not at issue here, Wyndham's sales representatives worked on commission. Wyndham characterizes the compensation plan as follows:

> [I]n any given workweek, Sales Representatives were paid a draw against their future commissions which was the equivalent of the applicable minimum wage rate for all hours worked by the Sales Representatives during the applicable pay period, plus any applicable overtime. The draw was considered an advance against Sales Representatives' future commissions. Under the Plans, the portions of draw which were treated as non-recoverable were payments for paid time off, overtime and meal break penalties. . . . The draw is recovered only against commissions and, thus, if a Sales Representative earns no commission, there is no recovery. The Sales Representative keeps it.

(Doc. No. 23-1 at 7–8.)

Plaintiff McGrath characterizes it slightly differently:

> Wyndham's plan divided the amount of commission earned by the number of hours a Sales Representative worked and, if the average amount per hour was greater than minimum wage, it paid the Representative with commissions. If the average was less, it advanced them a draw against future commissions. This draw was recovered in the next pay period in which commissions were

earned. Wyndham's policy recovered all amounts advanced. The only advances not completely recovered were those that remained 180 days after a Sales Representative's employment terminated.

(Doc. No. 43 at 11.)

However the plan is characterized, this much is clear: First, when no sales were made, Wyndham provided representatives a minimum hourly wage to cover all time worked, whether that time was spent on tours (sales activities) or other duties (which Plaintiffs argue were non-sales activities). Second, when sales were made, and sufficient commissions earned, Wyndham used those commissions to pay its representatives for all time worked—again, whether it was spent on tours or other duties. And if the commissions exceeded the minimum wage multiplied by the number of hours worked during the period, Wyndham recovered the hourly wage payments it had previously provided, up to the amount of that excess.

On June 16, 2015, Plaintiff McGrath filed a class action complaint ("McGrath Action") in San Diego Superior Court alleging five causes of action: (1) failure to pay minimum wage pursuant to California Labor Code section 1194; (2) failure to timely pay wages at separation pursuant to California Labor Code sections 201 through 203; (3) failure to reimburse reasonable business expenses pursuant to California Labor Code section 2802; (4) failure to provide accurate itemized wage statements pursuant to California Labor Code section 226; and (5) violation of California's Unfair Competition Law, Business & Professions Code section 17200. (See generally Doc. No. 1-2.)

On July 22, 2015, Wyndham removed the case to this court under the Class Action Fairness Act. (Doc. No. 1.) After a number of extensions to pretrial deadlines, Wyndham moved for summary judgment on February 1, 2017, and Plaintiff moved for class certification nine days later. (Doc. Nos. 23, 33.) The parties fully briefed both motions. Prior to the court ruling on those motions, the parties notified the court of their plan to participate in private mediation. (Doc. No. 63.)

Although the parties did not resolve the case at the conclusion of a full-day mediation

session, the parties continued to work with each other and the mediator to settle the matter. On May 16, 2017, in a joint status report, the parties informed the court of the existence of a related action against Defendants. (Doc. No. 66.) Separate from the McGrath Action, on March 8, 2017, Plaintiff O'Boy filed a class action complaint in Orange County Superior Court. Approximately a month thereafter, Wyndham removed the case to the United States District Court, Central District of California, Southern Division, <u>O'Boy v. Wyndham Vacation Ownership, Inc., et al.</u>, Case No. 8:17-CV-00563-JVS-JCG ("O'Boy Action"). (Doc. No. 81-2 ¶ 10.) The parties to the McGrath Action invited Plaintiff O'Boy and her counsel to attend mediation, and counsel for both Plaintiffs agreed to pursue settlement of the two cases jointly. (<u>See</u> Doc. No. 66.)

On July 3, 2017, Plaintiff McGrath moved, unopposed, for preliminary approval of a class settlement. (Doc. No. 71.) The court granted the motion on August 7, 2017, and issued an order preliminarily approving the settlement, preliminarily certifying the class for settlement purposes, approving the class notice program, appointing class counsel, and allowing the filing of the Amended Consolidated Complaint. (Doc. No. 75.) The Amended Consolidated Complaint combined the McGrath Action and the O'Boy Action, asserting a total of seven causes of action: (1) failure to pay minimum wage pursuant to California Labor Code section 1194; (2) failure to timely pay wages at separation pursuant to California Labor Code sections 201 through 203; (3) failure to reimburse reasonable business expenses pursuant to California Labor Code section 2802; (4) failure to provide accurate itemized wage statements pursuant to California Labor Code section 226; (5) failure to authorize and permit paid rest periods pursuant to California Labor Code section 226.7; (6) failure to provide meal periods pursuant to California Labor Code sections 226.7 and 512; and (7) violation of California's Unfair Competition Law, Business & Professions Code section 17200. (<u>See generally</u> Doc. No. 73 Exh. A.)[1]

---

[1] Although the caption of the complaint has a different order, the body of the complaint lists the causes of action in the order provided here.

Pursuant to the court's order, the settlement administrator took a number of actions to provide notice of the settlement to the proposed class. The settlement administrator made available an official settlement website that contained the full notice and other key documents, along with information on how to request an exclusion or object and important deadlines. (Doc. No. 81-4 ¶ 7.) The settlement administrator also set up a toll-free telephone number for class members to call with questions regarding the settlement and a facsimile number for receiving requests for exclusions, objection letters, and other communications. (Id. ¶¶ 5–6.) After Defendants provided a mailing list for the class members, the settlement administrator processed and updated that list. The settlement administrator then mailed notice packets to the 2,083 class members via First Class mail. For notice packets returned as undeliverable, the settlement administrator performed address traces to obtain more current addresses, to which notice packets were promptly re-mailed. As of the filing of Plaintiffs' motion for final approval, only 51 notice packets remain truly undeliverable. (Id. ¶¶ 9–12.) The settlement administrator has received six timely requests for exclusion and zero objections. (Id. ¶¶ 15–16.)

Plaintiffs now move, again unopposed, for final approval of the class settlement, and for attorneys' fees and costs, class representative service payments, and settlement administration expenses. The court held a fairness hearing on Plaintiffs' motion on January 22, 2018, to determine whether the class settlement should be granted final approval as "fair, adequate, and reasonable" pursuant to Federal Rule of Civil Procedure 23(e) and to allow all proposed settlement class members an opportunity to comment on the settlement.

## II. Settlement Terms

The pertinent terms of the parties' Joint Stipulation of Class Action Settlement ("Settlement Agreement"), (Doc. No. 73), are as follows:

### A. Class Definition

The Settlement Agreement between the parties establishes a class defined as: "all current and former California Sales Representatives of Wyndham Resort Development Corporation, Wyndham Vacation Ownership, Inc., Wyndham Worldwide Operations, Inc.,

or Wyndham Vacation Resorts, Inc., ("Wyndham") paid commissions, at any time during the period from June 16, 2011 through July 11, 2017." (Doc. No. 73 ¶ 6.)

## B. Class Award

Wyndham agreed to pay a non-reversionary Gross Settlement Amount of $7,250,000 in full satisfaction of the claims as more specifically described in the Settlement Agreement. (Id. ¶ 11.) The Net Settlement Amount is the maximum amount available for distribution to class members, after deduction of attorneys' fees and costs, class representative service payments, and settlement administration expenses. (Id. ¶ 13.) Each class member who does not opt-out from the Settlement Agreement will receive payment as follows:

> Each Participating Class Member will receive a Settlement Payment, which is a share of the Net Settlement Amount based on the number of workweeks worked by the Class Member as an employee of Defendants during the Class Period ("Individual Workweeks"). The Settlement Payment for each individual Participating Class Member will be calculated by setting the Participating Class Member's Individual Workweeks as a ratio of the total number of workweeks worked by all Class Members during the Class Period ("Class Workweeks") and then multiplying that ratio times the Net Settlement Amount. The formula is as follows: Jane Doe Settlement Payment = (Jane Doe Individual Workweeks / Class Workweeks) x Net Settlement Amount.

(Id. ¶ 31.) Any uncollected amounts attributable to settlement checks returned as undeliverable or remaining uncashed for more than 120 calendar days will be sent to the State of California, Department of Industrial Relations Unclaimed Wage Division. (Id. ¶ 46.)

## C. Attorneys' Fees and Costs, Class Representative Service Payments, and Settlement Administration Expenses

The Settlement Agreement allows Plaintiffs' counsel to request attorneys' fees of up to $2,416,666.67, litigation costs and expenses of up to $20,000, a class representative service payment of $10,000 to Plaintiff McGrath and $7,500 to Plaintiff O'Boy, and

Wyndham agrees not to oppose any of those requests. (Id. ¶¶ 27–28) Under the Settlement Agreement, the Settlement Administrator, Rust Consulting, Inc., will be paid for the reasonable fees and costs of administering the settlement up to $30,000. (Id. ¶ 29.) These amounts will be deducted from the Gross Settlement Amount, and the remaining Net Settlement Amount will be distributed among the class members. (Id. ¶ 13.)

## DISCUSSION

The court will first address Plaintiffs' motion for final approval of the class action settlement. The court will then address Plaintiffs' motion for attorneys' fees.

## I. Motion for Final Approval

### A. Legal Standards

Federal Rule of Civil Procedure 23(e) requires a district court's approval in order for any "claims, issues, or defenses of a certified class" to be "settled, voluntarily dismissed, or compromised . . . ." "The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge." Officers for Justice v. Civil Serv. Comm'n, 688 F.2d 615, 625 (9th Cir. 1982). In making this decision, the court must consider "whether the settlement is fundamentally fair, adequate and reasonable." Id. If the settlement will bind class members, Rule 23(e)(2) requires the court to hold a hearing.

Where the class is certified by stipulation of the parties for settlement purposes only, the court must still examine, and indeed give "heightened[] attention" to, the question of whether that stipulated class meets the requirements for certification under Rules 23(a) and (b). Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 620–21 (1997).

### B. Class Certification

As discussed above, when confronted with a request for settlement-only class certification, the court must determine whether the class is properly certified under Rule 23(a) and Rule 23(b) before turning to whether the settlement is fundamentally fair, reasonable, and adequate as required by Rule 23(e).

///

///

7

### 1. Rule 23(a)

To certify a class under Rule 23(a), the court must find that there is (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation.

#### a. Numerosity

Rule 23(a)(1) requires that a class be "so numerous that joinder of all members is impracticable." In deciding whether the numerosity requirement is met, courts must decide whether, without the formation of a class, "potential class members would suffer a strong litigation hardship or inconvenience if joinder were required." <u>Harris v. Palm Springs Alpine Estates, Inc.</u>, 329 F.2d 909, 913 (9th Cir. 1964). Here, the potential class consists of 2,077 commissioned sales representatives employed in California by Wyndham, thus satisfying the numerosity requirement.

#### b. Commonality

Under Rule 23(a)(2), there must be "questions of law or fact common to the class." "All questions of fact and law need not be common to satisfy the rule. The existence of shared legal issues with divergent factual predicates is sufficient, as is a common core of salient facts coupled with disparate legal remedies within the class." <u>Hanlon v. Chrysler Corp.</u>, 150 F.3d 1011, 1019 (9th Cir. 1998). Here, Plaintiffs allege that Defendants applied uniform employment policies to all California sales representatives. Thus, the commonality requirement is met.

#### c. Typicality

The claims of the representative parties also must be typical of the claims of the entire class. Fed. R. Civ. P. 23(a)(3). This rule embodies "permissive standards"—the claims need only be "reasonably co-extensive with those of absent class members; they need not be substantially identical." <u>Hanlon</u>, 150 F.3d at 1020. Because the claims of Plaintiffs and the class all arise from the same reimbursement policy applied to the same position, the typicality requirement is met here.

///

///

#### d. Adequacy of Representation

Finally, Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." The court must decide (1) whether Plaintiffs and their counsel have conflicts of interest with other class members, and (2) whether Plaintiffs and their counsel have vigorously prosecuted the case for the entire class. Hanlon, 150 F.3d at 1020.

There is no indication that Plaintiffs and their counsel have any interests in conflict with the class. With the exception of the class representative service payments, $10,000 for Plaintiff McGrath and $7,500 for Plaintiff O'Boy, Plaintiffs will be compensated in the exact same manner as the other class members. (See Doc. No. 73 ¶ 31.) There is also no indication that class counsel has not vigorously prosecuted the case on behalf of the class. The only compensation class counsel will receive is the proposed attorneys' fees and costs.

In sum, Plaintiff has met the requirements of Rule 23(a).

#### 2. Rule 23(b)

The court must also decide if Plaintiffs have met one of the requirements of Rule 23(b). Rule 23(b)(3), the subdivision most commonly used, requires that "questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods" of adjudication.

#### a. Predominance

"The predominance inquiry of Rule 23(b)(3) asks whether proposed classes are sufficiently cohesive to warrant adjudication by representation. The focus is on the relationship between the common and individual issues." In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009) (internal citations omitted). "[A] central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy." Vinole v. Countrywide Home Loans, Inc., 571 F.3d 935, 944 (9th Cir. 2009).

Though the predominance requirement is "far more demanding" than Rule 23(a)'s

commonality requirement, <u>Amchem</u>, 521 U.S. at 624, the court finds that common issues predominate here. Plaintiffs note that the common issues—Wyndham's compensation and expense reimbursement plans—predominate over any individual issues that may arise, and the thrust of the complaint, Wyndham's alleged failure to pay minimum wage for time spent on non-sales activities, is primarily a legal question.

### b. Superiority

The class action must also be superior to other methods available for adjudication. <u>Zinser v. Accuflix Research Institute, Inc.</u>, 253 F.3d 1180, 1190 (9th Cir. 2001). To assess superiority, courts look to class members' interests in individually controlling the case, the extent and nature of existing litigation by class members, and the desirability of concentrating the litigation on the claims in the forum, among other factors. Fed. R. Civ. P. 23(b)(3). Here, there is no indication that individual members want to control the case, the Settlement Agreement consolidates and resolves both this action and the O'Boy Action, and concentrating the claims in this forum is desirable. Thus, the superiority requirement is met.

In sum, Plaintiffs have met the requirements of Rule 23(b). As a result, the class is properly certified for settlement purposes.

### C. Rule 23(e)

After ensuring that the proposed class satisfies Rule 23(a) and Rule 23(b), the court must ensure that the settlement satisfies Rule 23(e). Among other requirements, Rule 23(e) demands that notice be directed in a reasonable manner[2] and the settlement be fair,

---

[2] The court finds that the notice provided to the class satisfied the court's preliminary approval order, paragraphs 15 and 35–40 of the Settlement Agreement, Rule 23(e), and due process. It (i) fully and accurately informed class members about the lawsuit and settlement; (ii) provided sufficient information so that class members could decide whether to accept the benefits offered, opt out and pursue their own remedies, or object to the settlement; (iii) provided procedures for class members to file written objections to the proposed settlement, to appear at the hearing, and to state objections to the proposed settlement; and (iv) provided the time, date, and place of the final fairness hearing.

reasonable, and adequate. Fed R. Civ. P. 23(e)(2). To make this latter determination, the court considers a number of factors, including:

> the strength of plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed, and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Officers for Justice, 688 F.2d at 624. "The primary concern . . . is the protection of those class members, including the named plaintiffs, whose rights may not have been given due regard by the negotiating parties." Id. While the "decision to approve or reject a settlement is committed to the sound discretion of the trial judge," Hanlon, 150 F.3d at 1026, the question "is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion," id. at 1027.

After considering the relevant factors and case history, the court finds that the settlement in this case meets the requisite standards.

As an initial matter, there is no evidence of collusion, and indeed, "no basis to conclude that the negotiations were anything other than a good faith, arms-length attempt by experienced and informed counsel to resolve this matter through compromise." See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013). The agreement comes in the wake of "extensive investigation, research, discovery, and analysis of damages," after which the parties "engaged in serious and informed arms'-length negotiations" before a wage and hour mediator. (Doc. No. 81-1 at 11–12.) [3] What is more, the attorneys involved are experienced in wage and hour class action cases.

As for the settlement itself, the court finds that it is fair, reasonable, and adequate. First and foremost, the amount offered in settlement strikes the court as appropriate. Defendants agreed to pay a non-reversionary Gross Settlement Amount of $7,250,000.

---

[3] The court cites to the pagination provided by CM/ECF rather than original pagination.

After all proposed deductions, the Net Settlement Amount will be approximately $4,777,330. From the Net Settlement Amount, the 2,077 participating class members will receive an estimated $56.78 for each week worked during the class period, resulting in average payments estimated at $2,300.11 and highest payments estimated at $18,406. (Doc. No. 81-4 ¶¶ 18–20.) In light of the risks Plaintiffs would face if the case progressed, such as the risk of an adverse ruling on class certification or summary judgment or the possibility of an unfavorable or less favorable result at trial or on appeal, the court finds the amount offered appropriate.

Furthermore, if this action does not settle now, both parties will face the prospect of lengthy litigation and significant expense in taking the case to trial. Given the issues involved, appellate proceedings are also possible.

Finally, class members have resoundingly approved the settlement. The settlement administrator provided notice of the settlement to the 2,083 class members.[4] Of the 2,083 class members, not a single one filed an objection, and only six timely requested exclusion,[5] resulting in a participating class of 2,077.

In sum, the court finds that the settlement satisfies the requirements of Rule 23(e). As a result, the court grants final approval of the settlement.

///

///

---

[4] 246 notice packets sent to class members have been returned as undeliverable. Through the efforts of the settlement administrator, only 51 notice packets remain truly undeliverable. (Doc. No. 81-4 ¶ 12.)

[5] Class Members Kristina Beste, Rhonda Schulke, Shannon Hamrick, Terri Cook, John Demarigny IV, and Maria Mendoza timely requested exclusion from the Settlement. Those six individuals represent a total of 293.57 work weeks. (Doc. No. 81-4 ¶ 15.) Twenty-three days after the deadline to request an exclusion had passed, eligible Class Member James Shannon Abbott submitted notice of his request to opt out. Six days before the final approval hearing, Abbott submitted a pro se motion to opt out of the class action settlement in this case. (Doc. No. 83.) The court will address Abbott's motion in a separate order.

## II. Motion for Attorneys' Fees and Costs

Plaintiffs, on behalf of class counsel Cohelan Khoury & Singer and Farnaes & Lucio APC, request $2,416,666.67 in attorneys' fees, which is one-third or 33.33% of the Gross Settlement Amount, and $10,575.13 in litigation costs. Additionally, Plaintiffs request a class representative service payments of $10,000 to Plaintiff McGrath and $7,500 to Plaintiff O'Boy. Finally, Plaintiffs seek payment of $27,927.76 to Rust Consulting, Inc., the settlement administrator, to cover the estimated cost of completing the administration of the settlement. Wyndham has agreed not to oppose any of those requests.

### A. Attorneys' Fees and Costs

While attorneys' fees and costs may be awarded in a class action where authorized by the parties' agreement, Federal Rule of Civil Procedure 23(h), "courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

#### 1. Attorneys' Fees

##### a. California Law

Under California law, which applies here, see Mangold v. Cal. Pub. Utils. Comm'n, 67 F.3d 1470, 1478 (9th Cir. 1995), attorneys' fees in class action cases may be calculated in one of two ways: the percentage method (a percentage of the common fund or settlement value) or the lodestar-multiplier method (reasonable hours spent multiplied by reasonable hourly rate adjusted to account for factors such as the risks taken and results achieved). See Laffitte v. Robert Half Int'l Inc., 1 Cal. 5th 480, 489 (2016). "[T]rial courts have discretion to conduct a lodestar cross-check on a percentage fee" or they may "use other means to evaluate the reasonableness of a requested percentage fee." Id. at 506.

Class counsel seeks one-third of the common fund Gross Settlement Amount, which would result in a fee award of $2,416,666.67. "California courts routinely award attorneys' fees of one-third of the common fund." Beaver v. Tarsadia Hotels, No. 11-CV-01842-GPC-KSC, 2017 WL 4310707, at *9 (S.D. Cal. Sept. 28, 2017) (approving a fee award of

one-third of the $15,150,000 settlement fund in a class action settlement); see Laffitte, 1 Cal. 5th at 506 (approving a fee award of one-third of the gross settlement amount in a wage and hour class action settlement); Chavez v. Netflix, Inc., 162 Cal. App. 4th 43, 66 n.11 (2008) ("Empirical studies show that, regardless whether the percentage method or the lodestar method is used, fee awards in class actions average around one-third of the recovery."). "Under the percentage method, California has recognized that most fee awards based on either a lodestar or percentage calculation are 33 percent." Smith v. CRST Van Expedited, Inc., No. 10-CV-1116- IEG WMC, 2013 WL 163293, at *5 (S.D. Cal. Jan. 14, 2013).

Here, the results achieved after extensive work by the parties and in light of the risk of no recovery for the class or counsel justify the award of attorneys' fees. In Laffitte, the California Supreme Court affirmed a one-third attorneys' fee award in a wage and hour class action that involved, among other things, extensive discovery, motions for summary judgment, a class certification motion, a motion for reconsideration, and two full-day mediations. See Laffitte v. Robert Half Int'l Inc., 180 Cal. Rptr. 3d 136, 140 (2014), aff'd, 1 Cal. 5th at 506. The trial court considered "the risk, expense, complexity and likely duration of further litigation; the risk of maintaining a class action status throughout trial; the extent of discovery completed; the experience and views of counsel; and the views of the class members." Id. at 142. In this case, the parties completed exhaustive discovery, fully briefed motions for summary judgment and class certification, and participated in a full-day mediation as well as "focused follow-up" with an experienced wage and hour mediator as settlement discussions progressed. In a frank assessment of the merits of the case, Plaintiffs recognize that "[p]roceeding with litigation would impose significant risk of no recovery." (Doc. No. 81-1 at 16–19.) Class counsel undertook that risk on a contingent basis. Achieving a $7,250,000 settlement that will provide immediate cash benefit to all class members in the face of these risks merits the requested one-third fee. Under the circumstances of this case, the requested fees are reasonable.

///

### b.     Ninth Circuit Law

Plaintiffs also argue that the fee request is reasonable under Ninth Circuit precedent. "Where a settlement produces a common fund for the benefit of the entire class, courts have discretion to employ either the lodestar method or the percentage-of-recovery method." In re Bluetooth Headset Prod. Liab. Litig., 654 F.3d at 942. The Ninth Circuit has adopted a benchmark of 25% of the total settlement, "which [the court] can then adjust upward or downward to fit the individual circumstances of this case." Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 273 (9th Cir. 1989).

Having decided to apply the percentage-of-recovery common fund doctrine, the court adopts the Ninth Circuit's 25% benchmark rate as its starting point. But the benchmark rate "must be supported by findings that take into account all of the circumstances of the case," Vizcaino v. Microsoft Corp., 290 F.3d 1043, 1048 (9th Cir. 2002), and the court, therefore, also considers a handful of other relevant factors in considering the reasonableness of Plaintiffs' request, including: (1) the results achieved; (2) the risk of litigation; (3) the benefits generated beyond the cash settlement fund; (4) the contingent nature of the fee and the financial burden carried; and (5) awards in similar cases, id. at 1048–50.

"District courts in this circuit have routinely awarded fees of one-third of the common fund or higher after considering the particular facts and circumstances of each case." Beaver, 2017 WL 4310707, at *10 (listing cases within the Ninth Circuit that approved a fee award of one-third the common fund). Plaintiffs argue that "the payment of significant back wages and increased post-settlement wages to Class Members, among other factors, support an upward departure from" the Ninth Circuit 25% benchmark fee. (Doc. No. 81-1 at 23.)

First, class counsel obtained $7,250,000 for the class, without reversion of any funds to Defendants. Class members will receive an average payment estimated at $2,300.11, with the highest payment estimated at $18,406. Accordingly, the results achieved favor an upward adjustment from the 25% benchmark to a fee of 33 and 1/3% of the common fund.

Second, as discussed above, class counsel litigated this case on a contingency basis, risking receiving zero compensation for two and one-half years of work and out-of-pocket costs. As noted by Plaintiffs, it was not until class counsel "successfully litigated the issue of separately compensable rest-period time for commission sales employees and obtained a published appellate decision," Vaquero v. Stoneledge Furniture, LLC, 9 Cal. App. 5th 98 (February 28, 2017), "that authority existed governing this claim." (Doc. No. 81-1 at 28–29.) Shortly after the decision in Vaquero v. Stoneledge Furniture, Wyndham proposed attending mediation for the first time. However, the defenses asserted by Wyndham and the risk of adverse rulings on the motions for summary judgment and class certification still present risk of no recovery for the class and counsel. Thus, the risk of litigation and the contingent nature of the fee support an upward adjustment.

Third, Plaintiffs present evidence that this action may have influenced Wyndham to implement a material change to its compensation plan that guarantees sales representatives receive at least minimum wage for all time worked, which would represent a benefit beyond the cash payment through the settlement amount.[6] Although there is no direct evidence to confirm that Wyndham changed its compensation policy as a direct result of this action, when considering the circumstantial evidence presented by Plaintiffs, the court recognizes that it is possible that this action may have influenced Wyndham's policy change. While this factor does not strongly favor an upward adjustment from the 25%

---

[6] Plaintiffs argue that the court should include the estimated $6,090,000 benefit to class members employed by Wyndham due to the change in compensation policy in the court's evaluation of the settlement value. (Doc. No. 81-1 at 24–26.) Doing so would result in a total settlement value of $13,340,000, of which Plaintiffs' attorneys' fee request would represent 18.1%. However, "courts should consider the value of the injunctive relief obtained as a 'relevant circumstance' in determining what percentage of the common fund class counsel should receive as attorneys' fees, rather than as part of the fund itself." Staton v. Boeing Co., 327 F.3d 938, 974 (9th Cir. 2003) (emphasis added). What is more, the change in Wyndham's compensation policy is not the result of injunctive relief. Because Plaintiffs do not provide the court with authority to support measuring Wyndham's policy change as injunctive relief, the court declines to do so.

benchmark, it does not weigh against the reasonableness of a one-third fee award when taking all factors into account.

Fourth, the amount requested is reasonable under the circumstances and in line with awards in similar cases.[7] <u>See, e.g.</u>, <u>Taylor v. Shippers Transp. Express, Inc.</u>, No. CV1302092BROPLAX, 2015 WL 12658458, at *17 (C.D. Cal. May 14, 2015) (awarding one-third of the $11,040,000 gross settlement amount in a wage and hour class action); <u>Smith v. CRST Van Expedited, Inc.</u>, 2013 WL 163293, at *5 (awarding one-third of the $2,625,000 total settlement fund in a wage and hour class action); <u>Singer v. Becton Dickinson & Co.</u>, No. 08-CV-821-IEG (BLM), 2010 WL 2196104, at *9 (S.D. Cal. June 1, 2010) (33 and 1/3% fee award in wage and hour class action).

Accordingly, the court grants Plaintiffs' request for a fee award of one-third of the Gross Settlement Amount.

## 2. Litigation Costs

Courts have recognized that "an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund." <u>In re Heritage Bond Litig.</u>, No. 02-ML-1475 DT, 2005 WL 1594403, at *23 (C.D. Cal. June 10, 2005) (quotation omitted). Plaintiffs have represented to the court that class counsel has incurred litigation costs in the amount of $10,575.13. (Doc. Nos. 81-1 at 37, 81-2 Exh. 5, 81-3 Exh. A.) The court also notes that the amount requested is just over one-half of the $20,000 cap set by the Settlement Agreement for litigation costs. (Doc. No. 73

---

[7] In addition, this award remains reasonable when cross-checked against the lodestar-multiplier method. Counsel has spent 824.1 hours in the prosecution of this action, for a lodestar of around $503,364 (hours spent multiplied by a reasonable hourly rate for the region and attorney experience). (<u>See</u> Doc. No. 81-1 at 33–35.) Under the lodestar approach, the requested fee results in a multiplier of about 4.8, which, although on the high end, is close to within the range of normal. <u>See</u> <u>Parkinson v. Hyundai Motor Am.</u>, 796 F. Supp. 2d 1160, 1170 (C.D. Cal. 2010) (observing that "multipliers may range from 1.2 to 4 or even higher"); <u>Vizcaino</u>, 290 F.3d at 1052–1054 (surveying multipliers in twenty-three class action suits and recognizing that courts applied multipliers of 1.0 to 4.0 in 83% of surveyed cases).

¶ 27.) Because the court concludes that an award of $10,575.13 in litigation costs is reasonable, the court grants Plaintiffs' request.

## B. Class Representative Service Payment

Plaintiffs also request class representative service payments of $10,000 to Plaintiff McGrath and $7,500 to Plaintiff O'Boy, for a total of 0.24% of the Gross Settlement Amount, "for their commitment to prosecuting this Action, their efforts, risks undertaken for the payment of attorneys' fees and costs if the Action had been lost, general releases of all claims arising from their employment, stigma upon future employment opportunities for having sued a former employer, as well as the substantial recoveries for every Class Member, and benefits to current and future employees." (Doc. No. 81-1 at 37.) Plaintiff McGrath provided nearly 1,500 pages of documents to counsel, participated in discovery, traveled to San Diego to attend a mediation session, and "stayed in touch with [her] attorneys on a regular basis the last two and one-half years." (Doc. No. 81-5 ¶¶ 8–13.) Plaintiff O'Boy also "invested much personal time and effort" in this action, (Doc. No. 81-1 at 38), including making herself available by telephone during an all-day mediation (Doc. No. 81-6 ¶¶ 10–17).

"Incentive awards are fairly typical in class action cases." Rodriguez v. West Publishing Corp., 563 F.3d 948, 958 (9th Cir. 2009). "Such awards are discretionary and are intended to compensate class representatives for work done on behalf of the class [and] to make up for financial or reputational risk undertaken in bringing the action." Dennis v. Kellogg Co., No. 09cv1786 L (WMC), 2013 WL 6055326, at *8 (S.D. Cal. Nov. 14, 2013). "The criteria courts may consider in determining whether to make an incentive award include: 1) the risk to the class representative in commencing suit, both financial and otherwise; 2) the notoriety and personal difficulties encountered by the class representative; 3) the amount of time and effort spent by the class representative; 4) the duration of the litigation; and 5) the personal benefit (or lack thereof) enjoyed by the class representative as a result of the litigation." Id.

///

18

The court finds that, given their respective involvement, Plaintiffs' request is reasonable, and the amount of the request is within the range awarded in similar cases. See Reed v. 1-800 Contacts, Inc., No. 12cv2359 JM (BGS), 2014 WL 29011, at *10 (S.D. Cal. Jan. 2, 2014) ($10,000 award); Singer v. Becton Dickinson and Co., 2010 WL 2196104, at *6 (S.D. Cal. June 1, 2010) ($25,000 award); Cicero v. DirectTV, 2010 WL 2991486, at *5 (C.D. Cal. July 27, 2010) ($5,000 award); Van Vranken v. Atlantic Richfield Co., 901 F. Supp. 294, 299 (N.D. Cal. 1995) ($50,000 award). Accordingly, the court grants Plaintiffs' request.

### C. Settlement Administration Expenses

Plaintiffs' request of $27,927.76 for the Settlement Administrator, Rust Consulting, Inc., is reasonable in light of the documentation provided by the Settlement Administrator outlining the expenses already incurred and estimated costs to finish administration of the Settlement Agreement. (Doc. No. 81-4 Exh. C.) The court also notes that the amount requested falls under the $30,000 cap set by the Settlement Agreement for administration costs. (Doc. No. 73 ¶ 29.) Accordingly, the court grants Plaintiffs' request.

## III. The Court's Order

Based on the preceding, the court orders as follows:

1. <u>Class Members</u>.[8] Class Members are defined as:

> [A]ll current and former California Sales Representatives of Wyndham Resort Development Corporation, Wyndham Vacation Ownership, Inc., Wyndham Worldwide Operations, Inc., or Wyndham Vacation Resorts, Inc., ("Wyndham") paid commissions, at any time during the period from June 16, 2011 through July 11, 2017 (the "Class" or "Settlement Class"). "Class Period" means the period from June 16, 2011 through July 11, 2017.

///
///

---

[8] Capitalized terms in this section, unless otherwise defined, have the same definitions as those terms in the Settlement Agreement.

2. <u>Binding Effect of Order</u>.  This order applies to all claims or causes of action settled under the Settlement Agreement, and binds all Class Members who did not affirmatively opt-out of the Settlement Agreement by submitting a timely and valid Request for Exclusion.  This order does not bind persons who filed timely and valid Requests for Exclusion.

3. <u>Releases</u>.  Plaintiffs and all Class Members who did not timely submit a valid Request for Exclusion are: (1) deemed to have released and discharged Defendants from any and all Released Claims accruing during the Class Period; and (2) barred and permanently enjoined from prosecuting any and all Released Claims against the Released Parties.  Additionally, Plaintiffs McGrath and O'Boy each, on her own behalf and on behalf of all successors in interest, fully and finally releases the Defendants from all claims of every nature, known or unknown, relating to any act or omission by any of the Defendants committed or omitted prior to the execution of this Agreement. The full terms of the releases described in this paragraph are set forth in paragraphs 54 and 55 of the Settlement Agreement and are specifically incorporated herein by this reference.

4. <u>Class Relief</u>.  Wyndham will deposit the Gross Settlement Amount into a Qualified Settlement Account, from which the Settlement Administrator will issue Individual Settlement Payments to Participating Class Members according to the terms and timeline stated in the Settlement Agreement.

5. <u>Attorneys' Fees and Costs</u>.  Class Counsel, Cohelan Khoury & Singer and Farnaes & Lucio APC, is awarded $2,416,666.67 in attorneys' fees and $10,575.13 in costs.  Payment shall be made pursuant to the timeline stated in paragraphs 26 and 45 of the Settlement Agreement.

6. <u>Class Representative Enhancement Payment</u>.  Plaintiff Michelle Renee McGrath is awarded $10,000 and Plaintiff Veronica O'Boy is awarded $7,500 as class representative enhancement payments.  Payment shall be made pursuant to the timeline stated in paragraphs 26 and 45 of the Settlement Agreement.

///

15cv1631 JM (KSC)

7. <u>Settlement Administration Expenses</u>. The Settlement Administrator, Rust Consulting, Inc., will receive payment of $27,927.96 for services rendered and to be rendered in connection with the completion of its administrative duties pursuant to the Settlement Agreement. Payment shall be made pursuant to the timeline stated in paragraphs 26 and 45 of the Settlement Agreement.

8. <u>Court's Jurisdiction</u>. Pursuant to the parties' request, the court will retain jurisdiction over this action and the parties thereto for the purpose of addressing: (1) the interpretation and enforcement of the terms of the Settlement; (2) Settlement administration matters; and (3) such post-judgment matters as may be appropriate under court rules or as set forth in the Settlement Agreement.

## CONCLUSION

For the foregoing reasons, the court grants Plaintiffs' motions for final approval of class settlement and attorneys' fees. The court hereby enters final judgment in this matter in accordance with the terms of the Settlement Agreement, but retains jurisdiction as described above.

IT IS SO ORDERED.

DATED: January 30, 2018

JEFFREY T. MILLER
United States District Judge